## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

CHRISTOPHER HINTZ and
SANDRA HINTZ,

          Plaintiffs,

v.

JPMORGAN CHASE BANK, N.A.,
individually and as successor in
interest to Washington Mutual
Bank, and WASHINGTON MUTUAL
BANK, F.A.,

          Defendants.

**MEMORANDUM OF LAW & ORDER**
Civil File No. 10-2825 (MJD/JJK)

Benjamin R. Skjold, Christopher P. Parrington, Joseph M. Cappola, and Ryan P. Myers, Skjold-Barthel, PA, Counsel for Plaintiffs.

Bryant D. Tchida and Peter J. Schwingler, Leonard Street and Deinard, PA, Counsel for Defendant JPMorgan Chase Bank, N.A.

No appearance by Washington Mutual Bank, F.A.

## I.      INTRODUCTION

      This matter is before the Court on Defendant JPMorgan Chase Bank,

N.A.'s Motion to Dismiss.  [Docket No. 2]  Because the Court does not have

jurisdiction over claims against Washington Mutual; liability claims against

Chase based on Washington Mutual's actions are barred; Plaintiffs' non-RESPA

claims against Chase are barred by res judicata; and Plaintiffs' RESPA claim fails

to state a claim upon which relief may be granted, the Court grants Defendant's

Motion to Dismiss.

## II.      BACKGROUND

### A.      Factual Background

According to the Complaint:

### 1.      Plaintiffs' Financing of Their Property

In February 2007, Plaintiff Christopher Hintz approached Defendant

Washington Mutual Bank ("Washington Mutual") to discuss financing a

lakefront home located at 5800 Hardscrabble Circle, Minnetrista, Minnesota (the

"Property"). (Compl. ¶ 20.) Washington Mutual valued the Property at between

$9.5 and $10 million. (Id. ¶ 23.)

Washington Mutual employee Chris O'Brien advised Mr. Hintz about his

financing options. (Id. ¶¶ 24-25.) O'Brien advised Mr. Hintz that he should

purchase the Property with a loan from Washington Mutual and then refinance

thirty days later in order to obtain funds to remodel the Property. (Id. ¶ 25.)

O'Brien further advised that Washington Mutual would provide Hintz with a home equity line of credit within ninety days of purchase of the Property in order to provide additional funds to remodel the Property.  (Id. ¶ 29.)  He also stated that the Property would increase in value, allowing Mr. Hintz to refinance a second time after a 120-day "seasoning period."  (Id. ¶ 34.)

Mr. Hintz and his wife, Plaintiff Sandra Hintz, purchased the Property on June 26, 2007, for $7 million.  (Compl. ¶ 37.)  They granted a mortgage in favor of Washington Mutual for $5.6 million and granted mortgages to two other individuals.  (Id.)

One month later, in July 2007, Plaintiffs refinanced the Property with Washington Mutual, executing a note and mortgage in favor of Washington Mutual for $6.75 million.  (Id. ¶ 39.)  Plaintiffs allege that, although the good faith estimate of settlement charges listed the total settlement charges as $109,072.10, the HUD-1 settlement statement listed the total charges as $401,863.10.  (Id. ¶¶ 42, 44.)

Plaintiffs further allege that Washington Mutual failed to provide them two notices each of their right to cancel the mortgage under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1635(a), instead, providing only one notice to Mr. Hintz

and no notices to Ms. Hintz.  (Compl. ¶¶ 46-47.)  Plaintiffs assert that the one

TILA notice provided failed to set forth the date on which the right to cancel

expired.  (Id. ¶¶ 49-50.)

Plaintiffs also allege that the HUD settlement statement improperly

classified brokers' fees as payoffs and failed to itemize payoffs.  (Compl. ¶¶ 60,

64.)

Plaintiffs claim that, based on Washington Mutual's previous advice that

they could obtain a home equity line of credit, Plaintiffs spent substantial funds

to repair the Property.  (Id. ¶ 65.)  However, Washington Mutual refused to

extend a home equity line of credit to Plaintiffs.  (Id. ¶ 68.)

During the summer and fall of 2007, Mr. Hintz worked with Washington

Mutual to attempt to obtain a second refinance in December 2007.  (Compl. ¶ 70.)

Washington Mutual assured Mr. Hintz that he could obtain a second refinance.

(Id. ¶ 71.)  In the fall of 2007, Washington Mutual told Mr. Hintz that it would

not provide a second refinance.   (Id. ¶ 73.)

In January 2008, Mr. Hintz contacted Washington Mutual to modify the

first refinance loan to avoid foreclosure.  (Compl. ¶¶ 90.)  Plaintiffs defaulted on

4

the refinance loan in spring 2008, but Mr. Hintz and Washington Mutual continued to negotiate throughout 2008.  (Id. ¶¶ 77, 91.)

On September 25, 2008, the federal government seized Washington Mutual and placed it into the receivership of the Federal Deposit Insurance Corporation ("FDIC").  (Compl. ¶ 86.)  That same day, the FDIC sold Washington Mutual's assets to Defendant JPMorgan Chase Bank, N.A. ("Chase").  (Id. ¶ 87.)   The Purchase and Assumption Agreement ("P&A Agreement") between Chase and the FDIC provides:

> Notwithstanding anything to the contrary in this Agreement, any liability associated with borrower claims for payment of or liability to any borrower for monetary relief, or that provide for any other form of relief to any borrower . . . related in any way to any loan commitment to lend made by the Failed Bank [Washington Mutual] prior to [September 25, 2008], or to any loan made by a third party in connection with a loan with the Failed Bank's lending or loan purchase activities are specifically not assumed by the Assuming Bank [Chase].

(P&A Agreement § 2.5.)

### 2.    Foreclosure

Plaintiffs allege that, at no time did Washington Mutual or Chase provide Plaintiffs with a Notice of Default as required under the Mortgage.  (Compl. ¶ 78.)

On October 14, 2008, Chase sent Plaintiffs a "Notice of Pendency of
Proceeding to Foreclose Mortgage," setting a foreclosure sale for December 5,
2008. (Compl. ¶¶ 88-89.) According to Plaintiffs, in November 2008, a
Washington Mutual representative stated that Washington Mutual was
authorized to modify the loan, and that Plaintiffs would be able to remain in the
Property pursuant to their ability to make payments. (Id. ¶ 92.) The
representative further stated that the foreclosure sale scheduled to occur on
December 5, 2008, had been cancelled pending negotiations and a potential
modification. (Id. ¶ 93.)

Between December 5, 2008, and January 12, 2009, Plaintiffs and the
Washington Mutual representative continued to communicate regarding the loan
modification. (Compl. ¶ 95.) On January 12, 2009, communication with the
Washington Mutual representative ceased. (Id. ¶ 99.) When Mr. Hintz finally
spoke to the representative on January 21, 2009, the representative told him that
the Sheriff's sale of the Property had already occurred on January 16, 2009. (Id. ¶
100.) Plaintiffs assert that neither Washington Mutual nor Chase ever informed
them that the Sheriff's sale had been rescheduled at all, let alone for January 16,
2009. (Id. ¶ 101.) Instead, Chase had published an amended "Notice of

Mortgage Foreclosure Sale" setting the Sheriff's sale for January 16, 2009 in Finance and Commerce on January 2, 2009.  (Id. ¶ 104.)

On January 16, 2009, Chase purchased the Property at the Sheriff's sale for $6.375 million.  (Compl. ¶ 110.)  Plaintiffs allege that this purchase price was 33% lower than the appraised value of the Property and 50% less than the value of the Property previously agreed on between Hintz and Washington Mutual.   (Id. ¶ 111.)

On July 8, 2009, Mr. Hintz sent Chase a document entitled "Actual Notice to Rescind; Notice Pursuant to RESPA (QWR); & Request for Accounting." (Compl. ¶ 116.)  In the letter, Mr. Hintz identified the Property and the refinance loan and alleged that the Hintzes were not provided with all of the correct TILA disclosures.  (Id. ¶¶ 117-118.)  The letter provided: "I hereby give effective notice to rescind and cancel the transaction indicated above."  (Id. ¶ 119.)  It further "complained of irregularities in [Washington Mutual's] and Chase's lending practices and requested that Chase provide an explanation of its lending practices in connection with the Mortgage."  (Id. ¶ 120.)  Chase did not respond to this letter.  (Id. ¶ 121.)

Mr. Hintz sent a second "Actual Notice to Rescind" to Chase on December

5, 2009. (Compl. ¶ 122.)  Chase did not respond to this second letter. (Id. ¶123.)

## B.    Procedural Background

### 1.    Mr. Hintz's First Lawsuit Against Chase

On July 8, 2009, Hintz filed a lawsuit against "JP Morgan Chase Bank,

National Association, doing business as Washington Mutual" in Hennepin

County District Court ("First Lawsuit").  The First Lawsuit alleged that the

closing and disclosure documents related to the first refinancing contained

discrepancies from the quoted good faith documents and violated TILA. (First

Lawsuit Compl. ¶ 13.)  It further alleged that Washington Mutual charged Mr.

Hintz higher costs and fees than it had originally represented. (Id.)  It asserted

that the closing documents included more than $200,000 in fees to undisclosed

parties, which were not accurately reflected in the true cost of the loan. (Id. ¶ 14.)

The complaint further asserted that Mr. Hintz defaulted on the loan in the spring

of 2008 and that, throughout 2008, Mr. Hintz attempted to negotiate with

Washington Mutual, and Washington Mutual represented that it would "do

some kind of workout." (Id. ¶ 7.)  However, Washington Mutual was unable or

unwilling to complete a loan modification. (Id. ¶ 8.)  The complaint asserts that,

8

on December 16, 2008, Washington Mutual postponed the scheduled Sheriff's

sale of the Property and no other date was set or discussed.  (<u>Id.</u> ¶ 9.)  On January

12, 2009, Washington Mutual stopped communicating possible solutions for Mr.

Hintz's inability to pay the loan.  (<u>Id.</u> ¶10.)  Then, on January 21, 2009, Mr. Hintz

was informed that a Sheriff's sale occurred on January 16, 2009.  (<u>Id.)</u>  All of

these actions caused Mr. Hintz financial strain and damages.  (<u>Id.</u> ¶ 15.)  Based

on these allegations, Mr. Hintz sought damages under theories of promissory

estoppel and negligence.  (<u>Id.</u> ¶¶17, 21.)

    In August 2009, Chase moved to dismiss the First Lawsuit for lack of

subject matter jurisdiction and failure to state a claim upon which relief can be

granted.  On January 4, 2010, the Honorable Janet N. Poston granted Chase's

motion and dismissed Hintz's claims with prejudice.  The court's order did not

provide any explanation for the dismissal.  On January 8, 2010, Chase served Mr.

Hintz with a Notice of Entry of Judge Poston's Order.  Mr. Hintz did not appeal.

### 2.    Eviction Proceedings

    In March 2010, Chase filed a petition for an order to show cause with the

Hennepin County Registrar of Titles, asking that the Registrar cancel the current

certificate of title for the Property and enter a new certificate of title in favor of

Chase, free from all memorials on the current certificate of title.  (Compl. ¶ 124.)

Chase also initiated an action in Hennepin County District Court to evict

Plaintiffs from the Property.  However, the parties represent that Chase and

Plaintiffs have stipulated to dismiss the eviction action and not initiate a similar

action until this current federal case is resolved.

### 3.      Procedural History of the Federal Case

On June 11, 2010, Plaintiffs served a Hennepin County Complaint on

Chase.  The Complaint alleges: Count I: Breach of Contract (Against all

Defendants); Count II: Breach of Mortgagee Duty – Minn. Stat. § 580.11 (Against

Chase); Count III: Breach of the Duty of Good Faith and Fair Dealing (Against

Chase); Count IV: Fraud (Against Washington Mutual and Chase as successor in

interest); Count V: Negligent Misrepresentation (Against all Defendants); Count

VI: Violation of TILA – 15 U.S.C. § 1635(a) (Against Washington Mutual and

Chase as successor in interest); Count VII: Violation of RESPA – 12 U.S.C. §

2605(e) (Against Chase); Count VIII: Injunctive Relief (Against Chase); Count IX:

Declaratory Action – Minn. Stat. § 555.02; Count X: Violation of the UDTPA –

Minn. Stat. § 325D.44 (Against Washington Mutual and Chase as successor in

interest); Count XI: Promissory Estoppel (Against Washington Mutual and Chase

as successor in interest); Count XII: Declaratory Action – Minn. Stat. § 555.02;

Count XIII: Action to Determine Adverse Claims Minn. Stat. § 559.01 (Quiet

Title) (Against Chase); and Count XIV: Attorneys' Fees.

The counts are based on four groups of factual allegations: 1) Washington

Mutual's alleged representations regarding a home equity line of credit, a second

refinance, and expected settlement charges made before the closing of the first

refinance (Counts IV, V, X, XI, and XIV); 2) Washington Mutual's alleged

violation of TILA (Counts VI, XII, XIII, and XIV); 3) the Hintzes' default, Chase's

foreclosure, and the Sheriff's sale (Counts I, II, III, V, VIII, IX, XIII, and XIV); and

4) Chase's alleged failure to respond to the first and second letters entitled

"Actual Notice to Rescind" (Count VII).

On July 1, 2010, Defendant Chase removed the lawsuit to this Court based

on federal question jurisdiction.

Chase now moves for dismissal of the Complaint based on res judicata and

failure to state a claim upon which relief can be granted.

## III.    DISCUSSION

### A.    Motion to Dismiss Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move the Court to dismiss a claim if, on the pleadings, a party has failed to state a claim upon which relief may be granted.  In reviewing a motion to dismiss, the Court takes all facts alleged in the complaint to be true.  <u>Zutz v. Nelson</u>, 601 F.3d 842, 848 (8th Cir. 2010).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  Thus, although a complaint need not include detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

<u>Id.</u> (citations omitted).

In deciding a motion to dismiss, the Court considers "the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint."  <u>PureChoice, Inc. v. Macke</u>, Civil No. 07-1290, 2007 WL 2023568, at *5 (D. Minn. July 10, 2007) (citing <u>Porous Media Corp. v. Pall Corp.</u>, 186 F.3d 1077, 1079 (8th Circ. 1999)).

### B.    Claims Against Chase Based on Wrongdoing by Washington Mutual

All liability claims against Chase and Washington Mutual based on Washington Mutual's alleged wrongdoing are barred because Chase has not

acquired or assumed any of the liabilities that Plaintiffs have alleged in this action and because claims against Washington Mutual must be raised before the FDIC.

### 1.     Claims Against Washington Mutual

As Plaintiffs concede, to the extent that the Complaint seeks to hold Washington Mutual itself liable, this Court lacks jurisdiction, and the proper venue is an administrative hearing before the FDIC.  See 12 U.S.C. § 1821(d)(13)(D); Feise v. Resolution Trust Corp., 815 F. Supp. 344, 347-49 (E.D. Cal. 1993).

### 2.     Monetary Claims Against Chase Based on Washington Mutual's Liability

As Plaintiffs also concede, based on the P&A Agreement, Chase cannot be held liable for monetary claims based on actions by Washington Mutual.  See, e.g., Yeomalakis v. F.D.I.C., 562 F.3d 56, 60 (1st Cir. 2009) (interpreting P&A Agreement and denying plaintiff's motion to substitute Chase for Washington Mutual because FDIC is the only appropriate party for claims of liability with regard to Washington Mutual).

### 3.     Claim for Rescission

Plaintiffs claim that their rescission claim based on Washington Mutual's

alleged violation of TILA survives against Chase, despite the P&A Agreement.

See, e.g., King v. Long Beach Mortgage Co., 672 F. Supp. 2d 238, 247-48 (D. Mass.

2009).  However, the Court need not reach this issue because Plaintiffs' TILA

rescission claim is barred on the merits, because the right to rescind expired at

the foreclosure sale, see Hintz v. JP Morgan Chase Bank, Civil No. 10-119

(DWF/AJB), 2010 WL 4220486, at *4 (D. Minn. Oct. 20, 2010), and is barred by res

judicata, as discussed below.

### C.     Res Judicata

All of Plaintiffs' remaining claims are barred by res judicata, with the

exception of Plaintiffs' claim against Chase for violations of the Real Estate

Settlement Procedures Act ("RESPA"), Count VII.

### 1.     Res Judicata Standard

Res judicata precludes parties from raising subsequent claims in a
second action when: (1) the earlier claim involved the same set of
factual circumstances; (2) the earlier claim involved the same parties
or their privities; (3) there was a final judgment on the merits; (4) the
estopped party had a full and fair opportunity to litigate the matter.
Res judicata applies equally to claims actually litigated and to claims
that could have been litigated in the earlier action.

Brown-Wilbert, Inc. v. Copeland Buhl & Co., P.L.L.P., 732 N.W.2d 209, 220

(Minn. 2007) (citations omitted).  "Once there is an adjudication of a dispute

between parties, res judicata prevents either party from relitigating claims arising

from the original circumstances, even under new legal theories." Hauschildt v.

Beckingham, 686 N.W.2d 829, 837 (Minn. 2004) (citations omitted).

### 2.    Same Set of Factual Circumstances

The First Lawsuit involved the same set of factual circumstances as the

current lawsuit.  The First Lawsuit asserted claims against Chase based on the

events surrounding 1) Washington Mutual's alleged representations regarding a

home equity line of credit, a second refinance, and expected settlement charges

made before the closing of the first refinance; 2) the refinance of the Property and

Washington Mutual's alleged violation of TILA; and 3) the Hintzes' default,

Chase's foreclosure, and the Sheriff's sale.  These facts are the basis for Counts I-

VI and VIII-XIV in the current lawsuit.

The First Lawsuit clearly articulated the facts upon which Mr. Hintz

sought relief.  It contained a narrative account of the lender-borrower

relationship between Washington Mutual and Hintz and the subsequent

foreclosure by Chase.  The first complaint clearly involved the same factual circumstances as are alleged in this lawsuit for all non-RESPA claims.

It is irrelevant whether Mr. Hintz specifically alleged every fact and legal theory in the First Lawsuit that he now asserts in this lawsuit.  Res judicata bars a party "from relitigating claims arising from under the original circumstances, even under new legal theories."  Hauschildt, 686 N.W.2d at 837.  Res judicata applies to claims that were litigated and to claims that could have been litigated. The First Lawsuit precludes all claims based on the facts alleged in the First Lawsuit, not just the claims for negligence and promissory estoppel explicitly asserted.

With respect to the TILA rescission claim, in order to prove that the right to cancel did not expire three business days after closing, Plaintiffs would need to prove that the closing documents failed to comply with TILA.  This inquiry is barred by the First Lawsuit, in which Mr. Hintz explicitly alleged flaws in the closing documents.  See Hauschildt, 686 N.W.2d at 840-41 ("The common test for determining whether a former judgment is a bar to a subsequent action is to inquire whether the same evidence will sustain both actions.") (quotation omitted); see also R.G. Fin. Corp. v. Vergara-Nunez, 446 F.3d 178, 188 (1st Cir.

16

2006) (holding that "ordinary preclusion principles continue to operate in the TILA milieu").

### 3.    Same Parties or Their Privities

The First Lawsuit involved the same parties, or their privities, as the current lawsuit.  Here, Mr. Hintz, one of the two Plaintiffs in this case, was the plaintiff in the state lawsuit.  As a joint owner of the Property, Ms. Hintz, the second Plaintiff in this case, was in privity with Mr. Hintz.  "[T]wo parties who have similar interests in the same realty are in privity." Deli v. Hasselmo, 542 N.W.2d 649, 657-58 (Minn. Ct. App. 1996) (holding that "[a]lthough not a party to her husband's action, at all times material, [the wife] was in privity with her husband as joint owner of the gymnastics facility" for purposes of res judicata).

As Plaintiffs have conceded, all claims against Washington Mutual must be dismissed.  Chase, the other Defendant in this lawsuit, was the defendant in the First Lawsuit.  The caption of the First Lawsuit complaint identified the defendant as "JP Morgan Chase Bank, National Association, doing business as Washington Mutual."  Chase was served with a summons and complaint, retained counsel, and defended the lawsuit.  (Second Tchida Decl., Ex. 1.)  The factual allegations in the First Lawsuit complaint included actions that occurred

17

in late 2008 and early 2009, after Chase had acquired Washington Mutual's

assets.  It is clear that Chase was the defendant in the First Lawsuit.

### 4.     Final Judgment on the Merits

The First Lawsuit resulted in a final judgment on the merits.  The First

Lawsuit was dismissed with prejudice, and Hintz did not appeal that final

judgment.  Under Minnesota law, a dismissal with prejudice is a "final

adjudication on the merits," whether or not it is based on substantive grounds.

See Johnson v. Hunter, 447 N.W.2d 871, 873 (Minn. 1989); Nielsen v. Eller Media

Co., No. A07-296, 2008 WL 1747893, at *3 (Minn. Ct. App. Apr. 15, 2008) ("A

dismissal with prejudice, even if based on nonsubstantive grounds, is an

adjudication on the merits and can form a basis for res judicata.") (citation

omitted).  (A dismissal for lack of subject matter jurisdiction will not be an

adjudication on the merits, see Charchenko v. City of Stillwater, 47 F.3d 981, 985

(8th Cir. 1995) (involuntary dismissal in Minnesota state court is "on the merits"

unless it is based on lack of jurisdiction, forum nonconveniens, or failure to join

an indispensable party).  However, while it is possible that the state court

dismissed the claims for lack of subject matter jurisdiction to the extent that they

could be interpreted to have been alleged against Washington Mutual, there is no

basis to conclude that the state court dismissed the claims against Chase, based on allegations of Chase's own wrongdoing with regard to the foreclosure and Sheriff's sale based on lack of subject matter jurisdiction.)

### 5.      Full and Fair Opportunity to Litigate

Plaintiff does not dispute that Mr. Hintz had a full and fair opportunity to litigate in the First Lawsuit.

### 6.      Conclusion

All of the prongs of res judicata have been met.  All counts, apart from the RESPA count, are dismissed based on res judicata.  The Court does not need to reach the merits of those counts.  It does point out, however, that there are other grounds upon which the Court could base its dismissal for failure to state a claim.  See, e.g., DeVary v. Countrywide Home Loans, Inc., 701 F. Supp. 2d 1096, 1109 (D. Minn. 2010) (holding that plaintiff cannot sue for violation of Minnesota Deceptive Trade Practices Act ("MDTPA") based on TILA or RESPA violations when the complaint failed to suggest that the violations "harmed anyone other than [plaintiff] or are part of a broader pattern of illegal conduct" because "[a] misrepresentation made to only one person as part of a single transaction simply does not support a private-attorney-general action under the MDTPA").

D.     **RESPA Claim**

Plaintiffs claim that Chase violated RESPA when it failed to respond to

two alleged qualified written requests for information ("QWRs") dated July 8,

2009, and December 5, 2009.  Plaintiffs allege that the QWRs "outlin[ed] various

grievances and request[ed] certain enumerated documents."  (Compl.  ¶ 164.)

They also assert that the QWRs "included . . . a statement of the reasons for the

belief that there were inconsistencies and irregularities with Plaintiffs' Mortgage

account."  (Id. ¶ 165.)

When a servicer receives a QWR concerning the servicing of a loan, it must

acknowledge receipt of the request within twenty days. 12 U.S.C. § 2605(e)(1)(A).

A QWR is written correspondence that "includes, or otherwise enables the

servicer to identify, the name and account of the borrower" and "includes a

statement of the reasons for the belief of the borrower, to the extent applicable,

that the account is in error or provides sufficient detail to the servicer regarding

other information sought by the borrower." Id. § 2605(e)(1)(B).  "The term

'servicing' means receiving any scheduled periodic payments from a borrower

pursuant to the terms of any loan, including amounts for escrow accounts

described in section 2609 of this title, and making the payments of principal and

interest and such other payments with respect to the amounts received from the

borrower as may be required pursuant to the terms of the loan."  12 U.S.C. §

2605(i)(3).

Once a loan servicer receives a valid QWR, it must provide disclosures

"relating to the servicing of [the] loan."  12 U.S.C. § 2605(e)(1)(A).

> Within sixty days of receiving a qualified written request, the
> servicer must respond in one of three ways: (1) make appropriate
> corrections to the borrower's account and notify the borrower of the
> correction; (2) after investigating the borrower's claims, explain to
> the borrower in writing why the account is correct; or (3) after
> investigating, explain to the borrower in writing why the
> information requested is unavailable or unobtainable.  12 U.S.C. §
> 2605(e)(2).

Stein v. Chase Home Finance, LLC, Civ. No. 09-1995 (MJD/JJG), 2010 WL

4736828, at *8 (D. Minn. Aug. 13, 2010), adopted by Civ. No. 09-1995 (MJD/JJG),

2010 WL 4736233 (D. Minn. Nov 16, 2010).

Based on the allegations in the Complaint, the letters were not QWRs

because Plaintiffs did not identify purported errors in their account or ask

questions related to Chase's servicing of their loan.  Based on the information in

the Complaint, Plaintiffs' letters had no relation to Chase's receipt or application

of their payments.  Instead, the Complaint alleges that the letters "complained of

irregularities in [Washington Mutual's] and Chase's lending practices and

requested that Chase provide an explanation of its lending practices in connection with the Mortgage."  (Compl. ¶ 120.)

There are no allegations in the Complaint regarding irregularities in Chase's servicing of the loan.  See, e.g., Bray v. Bank of Am., No. 1:09-CV-075, 2011 WL 30307, *12 (D.N.D. Jan. 5, 2011) (dismissing RESPA claim when "[t]he ongoing communications sent to the Defendants challenge the validity of the loan and accuse the Defendants of various statutory violations, but none of the communications relate to the servicing of the loan as that term is defined by statute"); Gates v. Wachovia Mortg., FSB, No. 2:09-cv-02464-FCD/EFB, 2010 WL 2606511, at *3 (E.D. Cal. June 28, 2010) (noting that "[c]ourts routinely interpret section 2605 as requiring a QWR to relate to the servicing of a loan, rather than the creation or modification of a loan").  "RESPA does not require a servicer to respond to any question that a borrower may ask-no matter how broad, vague, or far afield." De Vary v. Countrywide Home Loans, Inc., 701 F. Supp. 2d 1096, 1106 (D. Minn. 2010).

In their opposition brief, Plaintiffs purport to quote from the QWRs and assert that they asked Chase

> to produce: 1) For each payment received, a complete payment
> history, including but not limited to, the alleged loan to date, how

the payment was applied or credited (indicating the portion, if any, applied or credited to principal, interest, escrow or suspense, and any Servicer, the month to which the payment was applied and if interest and principle is calculated using an daily actuarial accounting method.

(Opposition Brief at 24.)

Plaintiffs have not attached the alleged QWRs to the Complaint. Neither party has submitted the letters as exhibits. Plaintiffs purport to quote from the letters in their brief; however, mere arguments of counsel found in a brief are not evidence to be considered by the Court when deciding a motion to dismiss. McAuley v. Federal Ins. Co., 500 F.3d 784, 787 (8th Cir. 2007). Plaintiffs have not sought to amend their Complaint to include these alleged excerpts from the letters. (Unlike the evidence of the First Lawsuit submitted by Chase, the letters are not part of the public record.) However, the Court concludes that, even if Plaintiffs were to attempt to amend their Complaint to allege that they mentioned servicing issues in their letters to Chase, the amendment would be futile because Plaintiffs fail to allege how the alleged RESPA violations caused them pecuniary damage.

An individual plaintiff's damages for violations of RESPA's QWR requirements are limited to "actual damages" and, "in the case of a pattern or

practice of noncompliance," up to $1,000 in statutory damages.  12 U.S.C. §2605(f)(1).   Here, Plaintiffs make no allegation of a pattern or practice.

"[A] RESPA plaintiff must plead and prove, as an element of the claim, that he or she suffered some actual damage as a result of the alleged RESPA violation."  Ricotta v. Ocwen Loan Servicing, LLC, Civil Action No. 06-cv-01502-MSK-KLM, 2008 WL 516674, *5 (D. Col. Feb. 22, 2008).   See also Copeland v. Lehman Bros. Bank, FSB, No. 09cv1774-WQH-RBB, 2011 WL 9503, at *3 (S.D. Cal. Jan. 3, 2011) ("Numerous courts have read Section 2605 as requiring a showing of pecuniary damages to state a claim.") (gathering cases).  "This pleading requirement has the effect of limiting the cause of action to circumstances in which plaintiff can show that a failure to respond or give notice has caused them actual harm."  Shepherd v. Am. Home Mortgage Servs., Inc., No. 2:09-1916, 2009 WL 4505925, at *3 (E.D. Cal. Nov. 20, 2009) (citation omitted).

In this case, "[e]ven reading the . . . Complaint liberally, Plaintiff[s] fail[] to plead nonconclusory factual allegations indicating how [they] [were] damaged by the alleged failure to . . . respond to the QWR[s]."  Copeland, 2011 WL 9503, at *4.  See also Melillo v. GMAC Mortgage, LLC, Civil No. 10-3392 (ADM/LIB), 2011 WL 96629, at *3 (D. Minn. Jan. 11, 2011) (dismissing RESPA claims when

"[t]he Complaint does not allege any facts to support a finding that . . . untimely response to the [plaintiffs'] qualified written request, if any, caused the [plaintiffs] to suffer any type of monetary loss").  Accordingly, the Court concludes that Plaintiffs fail to state a claim upon which relief may be granted in their RESPA count.

Accordingly, based upon the files, records, and proceedings herein**, IT IS HEREBY ORDERED**:

1.    Defendant JPMorgan Chase Bank, N.A.'s Motion to Dismiss [Docket No. 2] is **GRANTED**.

2.    All claims against Defendant JPMorgan Chase Bank, N.A. are **DISMISSED WITH PREJUDICE**.

3.    All claims against Defendant Washington Mutual Bank, F.A., are **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:   February 8, 2011          s/ Michael J. Davis
                                   Michael J. Davis
                                   Chief Judge
                                   United States District Court

25